FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 2 2 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JULIE M. SMITH,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendants.

3:10-cv-00696-HDM-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

March 22, 2012

    This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is plaintiff's motion for judgment on the pleadings (#13).[1] Defendant opposed and filed a cross-motion for summary judgment (#14, #15).[2] Plaintiff filed a reply (#16). For the reasons set forth below, the court recommends that plaintiff's motion for judgment on the pleadings (#13) be denied and defendant's cross-motion for summary judgment (#15) be granted.

## I. ADMINISTRATIVE PROCEEDINGS

    On July 14, 2006, plaintiff Julie M. Smith ("plaintiff") filed an application for Social Security disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act (AR 13, 122). Plaintiff alleged disability due to her having strokes, shingles, and seizures. *Id.* at 142. The Commissioner denied plaintiff's claim initially and on reconsideration. *Id.* at 13, 72. On March 3, 2009, plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Donald R. Colpitts who continued the case to allow plaintiff to

---

[1] Refers to the court's docket number.

[2] Docket numbers 14 and 15 are identical.

appear with representation. *Id.* at 39. On October 6, 2009, plaintiff and her attorney, Ms. Melissa Duchene, appeared at a hearing before ALJ Colpitts. *Id.* at 21. The ALJ filed a written opinion on October 23, 2009, in which he upheld the denial of plaintiff's claim.[3] *Id.* at 10-18. Plaintiff requested administrative review on November 23, 2009, and the Appeals Council denied review on September 7, 2010, rendering the ALJ's decision final. *Id.* at 1-3. Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on November 4, 2010 (#1).

## II. BACKGROUND

Plaintiff was thirty-nine years old at the time of her second hearing before ALJ Colpitts (AR 122). Plaintiff is a high school graduate. *Id.* at 146. Plaintiff's past relevant employment includes work as a cook, jewelry stone worker, dishwasher, gift wrapper, cake decorator, pizza delivery person, and dental assistant. *Id.* at 31-32. Plaintiff alleges that she became disabled on March 26, 2005 due to symptoms related to strokes she suffered. *Id.* at 122, 142.

The ALJ found plaintiff able to perform other jobs that exist in significant number in the national economy (AR 17) and thus found plaintiff "not disabled." Specifically, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability, March 26, 2005 (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disease of the cervical and thoracic spine, obesity, status post possible transient ischemic attacks (TIA), status post bilateral shoulder surgeries without objective indicators of continuing shoulder symptoms, a cognitive disorder, and a REM seizure disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

---

[3] On April 26, 2002, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income based on an alleged disability since March 14, 2002. The applications were denied and the claimant request a hearing before an ALJ, who found on March 25, 2005 that the claimant was not disabled. The plaintiff did not request administrative review (AR 47-57). ALJ Colpitts determined that the claimant overcame the presumption of continuing non-disability and that the doctrine of res judicata was not applicable. *Id.* at 14.

2

Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours and sit up to six hours in an eight-hour work day, is precluded from working at heights or around dangerous moving machinery, and is limited to light and simple work with simple instructions.

6. The claimant is not substantially credible.

7. The claimant cannot return to her past relevant work and has no transferable skills (20 CFR 404.1565 and 416.965).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

9. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 13-18.

## III. STANDARD OF REVIEW

The court must uphold the decision of an ALJ if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), citing *Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The Social Security Administration defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ considers: (1) whether the person is engaging in substantial gainful activity; (2) the severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV. ANALYSIS

Plaintiff challenges the ALJ's findings on the grounds that the ALJ: (1) failed to properly evaluate plaintiff's mental impairments; (2) failed to follow the treating physician rule and develop the record; (3) failed to properly consider plaintiff's credibility; and (4) relied upon flawed vocational expert testimony (#13). Defendant contends that the ALJ's opinion is supported by substantial evidence in the record, is free of legal error, and should be affirmed (#15).

**A.     Evaluation of Plaintiff's Mental Impairments**

**1. Special Technique**

At step two of the five-step inquiry, the ALJ found that plaintiff's cognitive disorder was a severe impairment (AR 14). Plaintiff argues that the ALJ's analysis of her mental impairment was improper "as it failed to comply with the 'special technique' for evaluating mental impairments established by the Commissioner" at step two of the sequential evaluation process (#13, p. 12). Plaintiff asserts that according to the special technique, the ALJ was required to rate the degree of

4

functional limitation resulting from the impairment(s) in accordance with paragraph (c), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Adjudicators use the special technique to assess an individual's limitations from a mental impairment in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings. *Id.* Plaintiff argues that remand is required because the ALJ erred in failing to explicitly discuss the special technique.

In *Gutierrez v. Apfel*, the Ninth Circuit held that the failure of the ALJ to complete and append the Psychiatric Review Technique Form ("PRTF"), as required at the time, required reversal of the district court's decision upholding the ALJ's denial of benefits. 199 F.3d 1048, 1050 (9th Cir. 2000), superseded by regulation as stated in *Blackmon v. Astrue*, 719 F.Supp. 2d 80, 92 (D.D.C. 2010). Although the regulations no longer require attachment of the PRTF, the regulations require the ALJ to complete a PRTF and append it to the decision, or to incorporate its analysis into the ALJ's findings and conclusions. *Keyser v. Commissioner of Social Security*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520a(c)(1) & (2)). The Ninth Circuit has held that an ALJ's failure to apply the special technique to assess an applicant's limitations from a mental impairment was legal error and remanded the case to the ALJ. *Gunderson v. Astrue*, 2011 WL 1041443 at *1 (9th Cir. 2010). Nevertheless, in *Gunderson*, the Ninth Circuit acknowledged that "in certain circumstances, the failure to explicitly use the special technique may constitute harmless error." *Id.*

Here, the ALJ's failure to explicitly discuss the special technique constitutes harmless error. The Ninth Circuit held that the ALJ's failure to document specific findings in his decision with respect to plaintiff's impairment-related functional limitations was not erroneous where the ALJ reviewed and discussed plaintiff's mental history and took into account the mental impairment at each step of the disability analysis. *Lemke v. Comm'r Soc. Sec. Admin.*, 2010 WL 2035141 at * 1 (9th Cir. 2010) ("ALJs are no longer required to attach a specific psychiatric review technique form when evaluating the severity of a claimant's mental impairments; while the present regulations

require adjudicators to document their findings using the special technique, they give ALJs greater discretion in deciding how to publish those findings"). In *Lemke*, the ALJ incorporated a doctor's documentation of the "B criteria" findings. *Id.*

In this case, the ALJ incorporated Drs. Doornink and Skewis's findings regarding plaintiff's mental impairment and its effect on her ability to work in his disability analysis. *Id.* at 15-16. The ALJ considered the special technique's four broad functional areas. First, the ALJ examined plaintiff's activities of daily living. The ALJ adopted Dr. Doornink's findings that the claimant "shops, goes out to eat, and she attends church" (AR 15, 449). The ALJ also examined plaintiff's social functioning and incorporated Dr. Doornink's findings that the claimant "can interact with the public, supervisors, and coworkers" and noted that she "displayed reasonable social skills with the undersigned." *Id.* at 449. In evaluating her ability to concentrate, the ALJ determined that the claimant did not appear unable to concentrate on the subjects discussed at her hearing. *Id.* at 14. There does not appear to be evidence in the record of an episode of decompensation.[4] Review of the record reveals that the ALJ considered plaintiff's cognitive disorder throughout his decision.[5]

Moreover, the Ninth Circuit has held that "the court will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Any error resulting from the ALJ's failure to apply the special technique at step two was harmless because the ALJ ultimately concluded that plaintiff had a severe mental impairment and proceeded to step three. Even if the ALJ should have included an analysis of the special technique in his step two determination, it is harmless error in light of the ALJ's ultimate findings of nondisability. At step five, the ALJ concluded that plaintiff could perform other work

---

[4] Episodes of decompensation refers to the deterioration of the mental health of an individual, who, up until that point, was maintaining his or her mental illness.

[5] It is legitimate to infer that the ALJ also adopted the conclusions of Disability Determination Services, which includes Dr. Skewis's Psychiatric Review Technique Form (AR 16, 378-388). Dr. Skewis determined that plaintiff's mental impairment caused no limitation on the activities of her daily living, moderate limitation in maintaining social functioning, moderate limitation in maintaining concentration, and no episodes of decompensation. *Id.* at 388.

6

in the national economy and thus, was not disabled (AR 17). *Robbins v. Soc. Sec. Admin.*, 446 F.3d 880, 885 (9th Cir. 2006) (holding that error that is inconsequential to the ultimate nondisability determination is harmless error); *see also Rabbers v. Comm'r of Social Sec. Admin.*, 582 F.3d 647, 658 (6th Cir. 2009).

Lastly, plaintiff appears to argue that the ALJ committed a legal error when he found at step two that plaintiff's cognitive disorder was severe and then failed to incorporate the limitations resulting from those impairments into the ALJ's final construction of plaintiff's residual functional capacity at steps four and five (#13, p. 13). The Ninth Circuit has held that satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five. *Hoopai v. Astrue*, 49 F.3d 1071, 1076 (9th Cir. 2007). The ALJ did not commit legal error by omitting functional limitations related to plaintiff's cognitive disorder from the RFC analysis simply because he determined they were severe for purposes of step two. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) (rejecting the petitioner's argument that the ALJ failed to account for her mental disorder, which the ALJ found to be severe at step two, in the final construction of her residual functional capacity, and noting the lack of "authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities.").

**2. Dr. Cooley's Opinion**

Plaintiff also argues that the ALJ improperly rejected the opinion of Dr. Cooley, an examining psychologist (#13, pp. 13-14). Defendant contends that the ALJ provided several reasons for rejecting Dr. Cooley's opinion (#15, p. 4).

The "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Dr. Cooley determined that plaintiff "would have difficulty understanding, remembering, and carrying out simple one or two step instructions/tasks" (AR 376). Dr. Cooley used the

7

Wechsler Memory Scale;[6] however, he did not utilize other psychological testing. The ALJ's primary reason for discrediting Dr. Cooley's opinion was that "Dr. Cooley did nothing to test the claimant's credibility and he appeared to accept all of her allegations, some of which were bizarre, without seeing a need for psychological malingering tests" (AR 15). *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded . . . where those complaints have been properly discounted."). The ALJ also noted that Dr. Cooley "did not see fit to test her for malingering by use of a 'TOMM'[7] test procedure commonly performed when a patient makes bizarre claims." (AR 17).

If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). More weight is given to an opinion that is more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4); *see also Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987) (holding that the Secretary may resolve disputes when medical evidence is contradicted). The ALJ determined that Dr. Doornink's findings contradicted Dr. Cooley's findings. *Id.* Dr. Doornink concluded that plaintiff could "understand, remember and carry out simple, one and two steps tasks" (AR 449). Dr. Doornink also opined that plaintiff could interact with the public, supervisors, and co-workers. *Id.* Moreover, Dr. Doornink's findings were more consistent with the record as a whole and the ALJ appropriately gave more weight to such an opinion. *See Sanchez*, 812 F.2d at 511.

The findings of Dr. Skewis, the Disability Determination Services's reviewing psychologist, also contradicted Dr. Cooley's findings. Dr. Skewis determined that claimant had been inconsistent in her statements and not fully credible. *Id.* at 396. Additionally, Dr. Skewis concluded that

---

[6] The Wechsler Memory Scale is a neuropsychological test designed to measure different memory functions in a person.

[7] The TOMM test (Test of Memory Malingering) is a neuropsychological procedure used to discriminate between malingered and real memory impairments in adults.

8

plaintiff is able to "sustain simple tasks with minimal social contact." *Id.* In review of Dr. Cooley's examination of plaintiff, Dr. Skewis found that plaintiff's score on the Wechsler Memory Scale revealed that she has "adequate skills for learning, understanding, remembering, and completing simple tasks." *Id.* at 396. Thus, Dr. Skewis concluded that Dr. Cooley's assessment was inconsistent with the results in his own report. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding that doctor's opinion may be rejected if it is self-contradictory). Therefore, the ALJ stated specific, cogent reasons why he discredited the opinion of plaintiff's treating physician.

B.  **Medical Opinion of Treating Physician**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Cases within the Ninth Circuit distinguish between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . ." *Smolen*, 80 F.3d at 1285 (citations omitted). "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund*, 253 F.3d at 1157 (9th Cir. 2001) (citing SSR 96-2p).

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); however, an ALJ may not reject the treating physician's opinion if it is contradicted by other physicians' opinions unless the ALJ "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (quoting *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); *see also Lester*, 81 F.3d at 830.

The ALJ was required to specify specific and legitimate reasons for rejecting Dr. Tafreshi's

assessment of plaintiff's condition. *Magallenes,* 881 F.2d at 751. The ALJ rejected Dr. Tafreshi's opinion for the following reasons: (1) Dr. Tafreshi failed to cite to objective evidence to support his conclusion; (2) Dr. Tafreshi's "ultimate" opinion stating that plaintiff was unable to work is reserved for the Commissioner; and (3) Dr. Tafreshi's opinion was inconsistent with all the other evidence in the record (AR 16-17).

The ALJ need not accept the opinion of any medical source, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). The ALJ stated in his decision that "[d]espite the minimal objective evidence, the claimant's treating physician offered the opinion that the claimant had been unable to work since 2004" (AR 16, 484). The ALJ explained that Dr. Tafreshi "made no attempt, whatsoever, to relate any specific objective findings to specific limitations" and "cited no objective supporting evidence for conclusion." *Id.* at 16. Plaintiff contends that while Dr. Tafreshi's letter indicating plaintiff was disabled did not itself cite to specific objective findings, Dr. Tafreshi sent plaintiff for extensive testing (#13, p. 16).[8] Despite this contention, the Ninth Circuit has held that the ALJ need not accept the opinion of a treating physician which is not adequately supported by clinical findings. *See Thomas,* 278 F.3d at 957. Because Dr. Tafreshi failed to cite to objective clinical findings to support his medical opinion, the ALJ did not err in discrediting Dr. Tafreshi's opinion regarding plaintiff's physical condition.

Opinions on whether a claimant is disabled or not are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1). "A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one." *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011). Thus, Dr. Tafreshi's statement that plaintiff has been unable to work since 2004 is not

---

[8] The court notes that the results of these tests do not comport with Dr. Tafreshi's ultimate opinion. For example, the MRI of plaintiff's cervical spine shows no significant abnormalities (AR 304-05). The ALJ noted that in November 2005, an MRI of claimant's cervical spine showed minimal degenerative changes (AR 304); an MRI of the brain revealed left cerebral hemispheric white matter which was stable (AR 305); tests showed normal carotid arteries (337); lumbar spine x-rays were normal (356); and tests showed no signs of radiculopathy (475).

binding on the Commissioner. *Id.* Plaintiff argues that the ALJ should have contacted Dr. Tafreshi to determine the basis of his opinion (#13, p. 18). However, the Ninth Circuit has held that "rejection of the treating physician's opinion on ability to perform any renumerative work does not by itself trigger a duty to contact the physician for more explanation." *McLeod,* 640 F.3d at 885. The ALJ did not err in rejecting Dr. Tafreshi's opinion regarding plaintiff's ability to work.

The ALJ determined that Dr. Tafreshi's medical opinion "was inconsistent with all of the other evidence of record" (AR 18). The opinions of Drs. Maningo, Doornink and the reviewing physicians and psychologists of the Disability Determination Services contradicted Dr. Tafreshi's opinion. *Id.* at 17. The ALJ noted that Dr. Doornink found that plaintiff interacted with the public, displayed reasonable social skills, and had an active daily life. *Id.* at 15, 449. The ALJ discussed Dr. Maningo's findings that plaintiff's had a normal grip strength and "had no hand tremors and no edema in any extremity." *Id.* at 16, 43. Dr. Maningo determined that plaintiff could raise her arms above her head without difficulty and do many other simple physical tasks and concluded "that the claimant could perform light work with no working at heights [sic] as a prophylactic measure due to the seizure disorder history." *Id.* at 16, 429-438. Additionally, Disability Determination Services reviewed plaintiff's medical record and also concluded that she could perform simple work. *Id.* at 16.

Additionally, the ALJ relied on medical evidence in the record in deciding to discredit Dr. Tafreshi's opinion and give more weight to other physicians' opinions. *Id.* at 15. The ALJ noted that in November 2005, an MRI of claimant's cervical spine showed minimal degenerative changes (AR 304); an MRI of the brain revealed left cerebral hemispheric white matter which was stable (AR 305); tests showed normal carotid arteries (337); lumbar spine x-rays were normal (356); and tests showed no signs of radiculopathy (475).[9] More weight is given to an opinion that is more

---

[9] Radiculopathy is the irritation and inflammation of a nerve caused by a herniated disk. Plaintiff cites to an MRA (magnetic resonance angiogram) which shows signs of mild to moderate signs of radiculopathy (AR 338-39). However, the ALJ cites to a more recent MRA. *Id.* at 475. "[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749.

11

consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4); *See also Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987) (holding that the Secretary may resolve disputes when medical evidence is contradicted). The court concludes that there is substantial evidence in the record to support the ALJ's determination that plaintiff's treating physician's opinion should be discredited.

C.  **Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred in assessing plaintiff's credibility (#13, p. 18). Defendant contends that the ALJ provided sufficient rational for discounting plaintiff's subjective claims (#15, p. 9).

The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036)). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

"Factors that the adjudicator may consider when making such a determination include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza*, 50 F.3d at 750. "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001), citing *Smolen*, 80 F.3d

at 1285. The causal relationship between the objective evidence of medical impairment and the claimant's complaints need only be a "reasonable inference," not a "medically proven phenomenon." *See Smolen*, 80 F.3d at 1282.

In this case, plaintiff presented medical evidence of underlying impairments. As a result, the ALJ was required to make credibility findings as to plaintiff's testimony. The ALJ found that the "medical record does not fully support the claimant's allegations of disabling pain and other symptoms" (AR 15). The ALJ offered clear and convincing reasons for discrediting plaintiff's subjective complaints of "disabling pain and other symptoms." *Id.*

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." *Bunnell*, 947 F.2d at 345. The ALJ determined that plaintiff's daily activities which reveal that she shops, goes out to eat, and attends church were inconsistent with her allegations (AR 15). The ALJ also found inconsistences in plaintiff's testimony of constant seizures, since she regularly drives an automobile. *Id.* at 16. "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Bunnell*, 947 F.2d at 346.

While a claimant is not required to provide objective medical evidence affirmatively proving the severity of his or her symptoms, an ALJ may reject a claimant's statements about the severity of the symptoms if those statements are inconsistent with or contradicted by objective medical evidence. *Id.* at 344 (en banc) (citing 42 U.S.C. 423(d)(5(A)). The ALJ determined that the objective medical evidence did not support plaintiff's allegations regarding the frequency and severity of her pain (AR 15). For example, at her hearing, the plaintiff stated that she has weakness and paralysis in her left arm, hand, leg, and foot; however, x-rays of her left hand, left elbow, spine, knee, and right shoulder x-rays showed normal results. *Id.* at 356, 359-361. With respect to her mental impairments, the ALJ found that the "claimant appears to have exaggerated her 'delusions' during the evaluation by Dr. Cooley." *Id.* at 17. The ALJ found that despite plaintiff's allegations,

13

her "treatment remained routine, and her doctors clearly believed that her symptoms were well controlled by the care they rendered, or they likely would have intensified their treatment efforts." *Id.*

Moreover, an ALJ may rely on a consulting examiner's opinion, which standing alone constitutes substantial evidence, because it rests on the examiner's own independent examination of the claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ relied on Dr. Skewis's finding that plaintiff was capable of performing light work (AR 16). The ALJ also considered Dr. Doornink's findings that plaintiff can interact with the public and has a moderately active daily life. *Id.* at 15.

The ALJ properly supported and adequately explained his adverse credibility determination with specific, clear, and convincing reasons.[10] Collectively, the reasons provide a sufficient basis for discrediting plaintiff's testimony. *See Tommasetti*, 533 F.3d at 1039 (upholding adverse credibility determination where the "ALJ provided several permissible reasons").

**D.    Vocational Expert Testimony**

Plaintiff argues that the ALJ relied on flawed vocational expert testimony because the hypothetical presented to the vocational expert: (1) failed to properly consider plaintiff's mental limitations; (2) relied upon the limitations found by a one-time examining source; and (3) failed to properly account for plaintiff's testimony (#13, p. 21). Defendant contends that the ALJ properly relied on the vocational expert's testimony and found that plaintiff was able to perform jobs that existed in significant numbers in the national economy (#15, p. 11). Defendant states that the ALJ had no obligation to include limitations in the hypothetical which were not supported by substantial evidence in the record. *Id.* at 12. The court agrees.

The ALJ meets his burden under step five by propounding to a vocational expert a

---

[10]    The ALJ concluded that during her testimony, claimant did not appear to have either a poor memory, or an inability to concentrate on the subjects discussed (AR 14). Plaintiff contends that the ALJ improperly relied on observations of the claimant made at the hearing (#13, p. 20). However, the "inclusion of the ALJ's personal observations does not render the decision improper." *See Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citations omitted). Contrary to plaintiff's contention, the ALJ did not sustain his adverse credibility determination on his personal observations alone, and thus it was proper for the ALJ to make such observations at the hearing.

hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects the claimant's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). It is, however, proper for an ALJ to limit a hypothetical to only those restrictions that are supported by substantial evidence in the record. *See Magallanes*, 881 F.2d at 756-57. An ALJ "need not include all claimed impairments in his hypotheticals, [but] he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

Here, the ALJ provided the vocational expert with a hypothetical based on plaintiff's limitations which are supported by medical evidence. The ALJ did not err in failing to consider plaintiff's mental limitations to the extent they were not supported by the record. *See Magallanes*, 881 F.2d at 756-57. Plaintiff argues the ALJ erred by not providing the vocational expert with additional hypotheticals which take into account plaintiff's mental limitations. However, the Ninth Circuit has held that an ALJ does not err by failing to incorporate limitations resulting from impairments found at step two. *See Hoopai*, 49 F.3d at 1076 (holding that "[t]he step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.").

Plaintiff argues that ALJ incorrectly relied upon the limitations "found by a one-time examining source who was not provided with any of plaintiff's medical records" (#15, p. 12). As the court discussed in part two of this recommendation, the ALJ did not err in discrediting the opinion of plaintiff's treating physician and giving more weight to other physicians' opinions because he set forth specific and legitimate reasons for doing so. *See Valentine*, 574 F.3d at 692.

Plaintiff claims that the ALJ failed to properly account for plaintiff's testimony as to the severity of her symptoms. However, the ALJ offered "specific, clear and convincing reasons" for finding plaintiff's testimony not to be credible and rejecting her testimony as to the severity of symptoms she experiences. *Smolen*, 80 F.3d at 1281 (9th Cir. 1996). As the court previously

discussed, the ALJ did not err in discrediting plaintiff's alleged limitations because he determined that they were not supported by the record. *Id.*

The ALJ determined that the plaintiff is capable of performing jobs, significant in number, in the national economy, such as a "housekeeper" or "cleaner polisher" (AR 17). The ALJ properly relied on the vocational expert's testimony that plaintiff would be able to perform light and unskilled jobs. *Id.* at 33-34.

## V. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's decision was supported by substantial evidence and therefore recommends that plaintiff's motion for judgment on the pleadings (#13) be denied and defendant's cross-motion for summary judgment (#15) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for judgment on the pleadings (#13) be **DENIED** and defendant's cross-motion for summary judgment (#15) be **GRANTED**.

**DATED:** March 22, 2012.

UNITED STATES MAGISTRATE JUDGE

16